IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF ARIZONA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  FILED: JULY 15, 2008 |
| | ) | 08CV3994 |
| LC MORTGAGE CORPORATION | ) | JUDGE LINDBERG |
| CONTRACTORS UNLIMITED, LLC | ) | MAGISTRATE JUDGE SCHENKIER |
| GOODFELLAS REALTY, INC., | ) | TG |
| REMOND L. HOLLIS a/k/a | ) | |
| REMOND L. HOLLIS, SR., | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COMES Plaintiff, FIRST NATIONAL BANK OF ARIZONA, by and through its attorneys, Craig C. Smith and Michael J. Weik of Smith & Weik, LLC and complains against the Defendants as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction by virtue of diversity of citizenship. The citizenship of Plaintiff is diverse from the citizenship of the Defendant.  The amount in controversy exceeds $75,000.00.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a) as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## Parties

3. Plaintiff is a national banking association chartered under 12 U.S.C. § 24, with the State of Arizona designated as its main office in its articles of association and therefore, is a citizen of the State of Arizona.

4. Defendant LC Mortgage Corporation is a corporation incorporated in the State of Texas with its principal place of business in Texas.

1

5. Defendant Contractors Unlimited LLC, is an Illinois Limited Liability Company. Contractors Unlimited has one member, Marcus Rogers. Marcus Rogers is an individual domiciled in the State of Illinois and therefore is a citizen of the State of Illinois.

6. Defendant Goodfellas Realty, Inc., is an Illinois Corporation with its principal place of business in Illinois.

7. Remond L. Hollis a/k/a Remond L. Hollis, Sr., is an individual domiciled in the State of Illinois and therefore is a citizen of the State of Illinois.

## Count I
### *Breach of Contract v. LC Mortgage Corporation*

8. Plaintiff incorporates the allegations contained in Paragraphs 1-7 above as its allegations in Paragraph 8.

9. On or about August 29, 2006, First National Bank of Arizona ("FNBA") and LC Mortgage Corporation ("LC Mortgage"), entered into a Broker Agreement (the "Agreement") whereby FNBA agreed to originate mortgage loans packaged by LC Mortgage and submitted to FNBA for processing and/or underwriting, approval and funding. A true and correct copy of the Agreement is attached hereto as Exhibit A and is incorporated herein by reference.

10. Pursuant to the Agreement, on or about October 2006, LC Mortgage submitted a mortgage loan application package identified as FNBA loan number 530023938 (the "23938 Loan Package") for approval by FNBA.[1]

11. LC Mortgage represented to FNBA that the 23938 Loan Package was for a first mortgage loan to finance the purchase of an owner occupied primary residence located in Chicago, IL.

---

[1] FNBA has omitted any and all nonpublic personal information with regard to the borrowers of the Loans in compliance with the Gramm-Leach-Bliley Act. FNBA will make this information available to Defendant should Defendant request disclosure of nonpublic personal information of any particular borrower(s), Defendant executes a confidentiality agreement and the Court authorizes the release of the nonpublic personal information.

2

12. Paragraph 6 of the Agreement generally provides that FNBA has the right to require LC Mortgage to repurchase a loan should the borrower default within 120 days after the date on which the first payment is due to FNBA.

13. No payments were made on the 23938 Loan.

14. LC Mortgage made certain representations and warranties to FNBA regarding the 23938 Loan Package as set forth in the Agreement, including a representation that all information submitted in connection with a loan application would be accurate and complete and not false or misleading in any respect.

15. As part of the 23938 Loan Package, LC Mortgage submitted to FNBA a loan application and an occupancy affidavit representing that the borrower would occupy the Subject Property as her primary residence after closing.

16. In fact, the borrower never intended to occupy the property and never occupied the property.

17. The false information LC Mortgage submitted to FNBA as part of the 23938 Loan Package constitutes a breach of the representations and warranties LC Mortgage made to FNBA in the Agreement.

18. FNBA made demands on LC Mortgage to cure the breach. Despite those demands, LC Mortgage has wholly failed to cure.

19. As a result of LC Mortgage Corporation's breach, FNBA has sustained injury in the aggregate in excess of $75,000.00.

20. The Agreement provides that the prevailing party shall be entitled to recover reasonable attorney's fees and costs. FNBA has been required to expend attorney's fees to enforce the terms of the Agreement.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against LC Mortgage Corporation, award Plaintiff its reasonable attorney's fees and costs of litigation and for such other relief, as this Court deems just and equitable.

## COUNT II
### *Civil Conspiracy v. Remond L. Hollis a/k/a Remond L. Hollis, Sr.*

21. Plaintiff incorporates the allegations contained in Paragraphs 1-7 above as its allegations in Paragraph 21.

22. On or about October, 2006 an individual ("Owner") owned the property commonly known as 8438 S. Aberdeen, Chicago, IL ("Subject Property").

23. The Subject Property was in foreclosure.

24. Remond L. Hollis a/k/a Remond L/ Hollis, Sr. ("Hollis") approached a straw buyer ("Straw Buyer") and offered to pay Straw Buyer $5,000.00 if she would take title to the Subject Property for six months.

25. Hollis represented to Straw Buyer that during that time, he would make repairs to the Subject Property and make the payments on a loan used to fund the purchase of the Subject Property.

26. Straw Buyer agreed with Hollis to take title to the Subject Property for six months while Hollis would purportedly make payments on a purchase-money loan, repair the property and prepare to re-sell it.

27. Straw Buyer agreed with Owner to purchase the Subject Property for $185,000.00.

28. Straw Buyer agreed with Hollis that she would apply for a loan to fund the purchase the Subject Property.

29. Straw Buyer never intended to occupy the Subject Property.

4

30. Hollis knew that Straw Buyer never intended to occupy the Subject Property.

31. Straw Buyer completed an application for a loan to purchase the Subject Property.

32. Straw Buyer represented on her loan application that the loan was for the purchase of an owner-occupied residence.

33. Straw Buyer executed a separate written representation ("Occupancy Affidavit") stating that she would occupy the Subject Property as her primary residence.

34. At the time Straw Buyer submitted the loan application and the Occupancy Affidavit to FNBA, Straw Buyer knew that she would not occupy the Subject Property as her primary residence.

35. Straw Buyer submitted the loan application and the Occupancy Affidavit to FNBA with the intent to induce FNBA to make a loan to fund the purchase of the Subject Property.

36. On October 31, 2006 FNBA funded the loan to Straw Buyer in the amount of $185,000.00 and took a security interest in the Subject Property based on Straw Buyer's representation that she would occupy the Subject Property as her primary residence.

37. If FNBA had known the truth about Straw Buyer's intention, it would not have funded the loan.

38. No payments were made on the Subject Loan.

39. FNBA eventually filed foreclosure proceedings on its mortgage and subsequently took title to the Subject Property. The Subject Property was sold for an amount insufficient to satisfy Straw Buyer's debt to FNBA.

40. As a result of Defendant's actions, FNBA has suffered damages in the aggregate in excess of $75,000.00.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against Remond L. Hollis a/k/a Remond L. Hollis, Sr., and for such other relief, as this Court deems just and equitable.

## COUNT III
*Unjust Enrichment v. Contractors Unlimited, LLC and Goodfellas Realty, Inc.*

41. Plaintiff incorporates the allegations contained in Paragraphs 1-7 and 21-40 above as its allegations in Paragraph 41.

42. The closing of the sale of the Subject Property from Owner to Straw Buyer and the concurrent funding of Subject Loan took place on October 31, 2006 ("Closing").

43. On October 31, 2006 the Loan was closed and funds were disbursed.

44. Goodfellas Realty, Inc., received $13,000.00 from the proceeds of the Closing.

45. Contractors Unlimited, LLC received $17,000.00 from the proceeds of the Closing.

46. Remond L. Hollis a/k/a Remond L. Hollis, Sr., is the president of Goodfellas Realty, Inc.

47. Defendants have been unjustly enriched by the receipt of the above-referenced funds.

48. As a result of Defendant's actions, FNBA has suffered damages in the aggregate in excess of $75,000.00.

6

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in its favor and against Contractors Unlimited, LLC and Goodfellas Realty, Inc., and for such other relief as this Court deems just and equitable.

        Respectfully Submitted,

        FIRST NATIONAL BANK OF ARIZONA

        s/ Craig C. Smith\
        One of Its Attorneys

Craig C. Smith #6238126\
Michael J. Weik # 3125782\
Smith & Weik, LLC\
10 S. LaSalle St., Suite 3702\
Chicago, IL 60603\
312-895-4560

# EXHIBIT A

AUG-29-2006 TUE 11:54 AM ● ●ORTGAGE     FAX NO. 9● ● 09196     P. 07 



### BROKER AGREEMENT

This Broker Agreement (the "Agreement") is made and entered into this _29th_ day of _August_ 20_06_ between First National Bank of Arizona, a national association ("Lender"), located at 17600 North Perimeter Drive, Scottsdale, Arizona, 85255 and _LC Mortgage Corporation_, a _Texas_ ("Broker"), with its principal office at _4545 Fuller Drive, Ste 275, Irving, TX 75038_.

### RECITALS

This Agreement is intended to set forth the entire understanding between the parties whereby Lender agrees to originate mortgage loans ("Loans") processed and/or packaged by Broker and submitted to Lender for processing and/or underwriting approval and funding from time to time under programs offered by Lender

### AGREEMENT

1.  **Relationship** Nothing in this Agreement shall be construed as making the Broker a joint venturer, partner, representative, employee, or agent of Lender Broker shall not hold itself out as such, nor shall it use the Lender name in any advertising. Broker is an independent contractor, and shall determine the method, details and means of performing all services described in this Agreement

2.  **Loan Submission** Broker shall submit to Lender applications, credit information and other data ("Loan Packages") for Borrowers under such programs, terms, and requirements as Lender may establish from time to time Broker shall furnish to Lender at Broker's sole expense such credit, financial, and other information concerning Borrower that Lender may require in determining when to approve and fund the Loan(s), and perform other services as Lender shall require in closing any Loan(s)

3.  **No Obligation** Broker is under no obligation to send any Loan to Lender, and Lender is under no obligation to originate any Loans sent by Broker

4.  **Fees.** Any fee, commission, or other consideration to be received by Broker with respect to any Loan shall be paid by Lender to Broker only after Lender deducts from the Loan all its fees and charges in connection therewith as specified in Lender's price schedules released from time to time No payment whatsoever shall be owed to Broker by Lender on account of any proposed Loan which is not funded and closed

1

AUG-29-2006 TUE 11:54 AM ● 1ORTGAGE    FAX NO ● 09196    P. 08

5. **Broker Warranties**

   (a) Broker represents and warrants the following.

   (i) <u>Valid Organization</u>. Broker is duly organized and validly existing and in good standing under the laws of its state of organization and has all the qualifications, registrations, licenses and permits necessary to carry on its business and to engage in the transactions contemplated by this Agreement. In addition, Broker is in good standing, and has not had its approval status terminated, with any governmental agency with whom it conducts business, including without limitation, HUD, FNMA and FHLMC. Broker has not been restricted from doing business with any mortgage insurance company, except as disclosed to Lender in writing.

   (ii) <u>Authority</u>. Broker has all requisite power and authority to execute, deliver, and perform under this Agreement and its performance hereunder does not violate any provision of law, rule, regulation, order, writ, judgment, injunction, decree, determination, award or agreement presently in effect, or to the knowledge of Broker, pending.

   (iii) <u>Absence of Claims</u>. There is no claim, litigation, investigation, or proceeding pending or, to the best of Broker's knowledge, threatened against or otherwise materially affecting Broker's business or performance of its obligations under this Agreement.

   (iv) <u>FHA or VA Approvals</u>. Broker shall maintain any FHA or VA approvals required for the origination and processing of loans under this Agreement during the term of this Agreement, as applicable.

   (v) <u>Loan Officers</u>. All loan officers employed by Broker, acting as Broker's agent or independent contractor, have the requisite authority to originate loans in the state(s) where they do business, and have all the qualifications, registrations, licenses and permits necessary to originate loans in compliance with applicable state and local law.

   (b) In the event that Lender agrees to close and fund loans from Broker under an FHA sponsorship or VA agency, Broker represents, warrants and agrees to the following, as applicable:

   (i) <u>Eligibility</u>. Broker is in compliance and shall remain in compliance with all eligibility requirements of HUD or VA for originating loans under a sponsorship or agency relationship, including, but not limited to, minimum net worth requirements. Should eligibility be impaired, Broker agrees to immediately notify Lender.

   (ii) <u>Guideline Compliance</u>. Broker shall operate in compliance with all of HUD's or VA's guidelines regarding the origination, processing and closing of FHA or VA loans.

   (iii) <u>Manuals</u>. Broker shall retain any required HUD or VA manuals in its branch/office.

   (iv) <u>Quality Control Plan</u>. Regarding FHA originations, Broker shall maintain an acceptable quality control plan, as required by HUD 4060.1 chapter 6.

   (v) <u>Annual Fees</u>. Broker shall pay any annual renewal fees required by HUD or VA

2
Broker Agreement Updated 8-18-2006

7430V6/OTHER

(vi) <u>Lock-in Terms</u>. Broker shall not sign a lock-in agreement with the borrower until the loan has been locked in with Lender and Lender has accepted the lock-in terms.

(vii) <u>Fees and Pricing</u>. Regarding FHA originations, Broker shall comply with HUD mortgagee letters 94-43 and 94-16 as well as any other HUD mortgagee letters as they relate to fees, overages and tiered pricing.

(viii) <u>HUD Guidelines</u>. Broker agrees to comply with all regional HUD office guidelines regarding maximum allowable fees, such as origination fees, inspection fees, attorney fees, overnight delivery fees, etc. In the event that it is discovered that Broker has charged fees in excess of those allowed by HUD, Broker shall promptly refund any excess to the borrower. Underwriting approval by Lender shall not negate the responsibility of Broker in this regard.

(ix) <u>Insurance or Guaranty</u>. Broker acknowledges that Lender will submit said FHA or VA loans for insurance or guaranty. Broker agrees to correct any deficiencies in documentation so the loans may be insured or guaranteed.

(c) With respect to each Loan Package submitted by Broker to Lender, Broker represents and warrants the following:

(i) <u>No Assignment</u>. Broker has not assigned, encumbered, brokered or locked in the Loan Package or any interest in the Loan to or with any other party other than Lender.

(ii) <u>Compliance with Laws</u>. All disclosures required of Broker by Regulation Z issued under the Truth in Lending Act ("TILA") and the Notice of the Right to Cancel prescribed by the TILA, as well as all other required disclosures now existing or hereinafter required by law, have been properly prepared and provided to applicants in a timely fashion. Broker's actions with respect to each Loan Package have been made in full compliance with the Truth in Lending Act, Regulation Z, Equal Credit Opportunity Act, Real Estate Settlement Procedures Act, Regulation B, the Fair Credit Reporting Act and all other applicable law and regulations. All documents and disclosures are in full compliance with applicable state and federal laws and regulations.

(iii) <u>No Fraud or False Statements</u>. All documents submitted by the Broker in connection with a Loan Package presented to Lender are, to the best of Broker's knowledge after due inquiry in accordance with standard industry practices, in every respect valid and genuine and no fraud or misrepresentation has occurred in connection with the submission of any Loan Package or origination of any Loan. All information (credit and otherwise) submitted in connection with a loan application is, to the best of Broker's knowledge after due inquiry in accordance with standard industry practices, accurate and complete and no information has been submitted which is false or misleading in any respect. The term "information" as used in this paragraph shall mean any and all information and documentation obtained from the applicant and any reference source.

(iv) <u>Sole Originator</u>. Broker warrants that it is the sole originator of all Loan Packages submitted to Lender by Broker pursuant to this Agreement.

(v) <u>No Adverse Action</u>. To the best of Broker's knowledge, no bankruptcy action, foreclosure proceedings or other court action is pending against the borrower or the mortgaged property action as security for the Loan, other than as disclosed to Lender in writing.

AUG-29-2006 TUE 11:55 AM    ORTGAGE          FAX NO                09196              P. 10

(vi)   No Claim or Defense   The borrower has no claim or defense against Broker or any agent, assignee or successor of Broker by reason of any act or omission of Broker, its directors, officers, agents or employees

(vii)   No Broker Payments.   Broker has not made, directly or indirectly, any payment on (x) the Loan closed or funded by Lender nor on (y) any Loan extended by the borrower to any other person or entity

(viii)   Appraisals   With respect to each appraisal

(1)   Broker understands the requirements of Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), and the regulations implementing Title XI of FIRREA ("Regulations").

(2)   The appraisal delivered to Lender complies with Title XI of FIRREA and the Regulations

(3)   The appraisal shall have been completed by an appraiser who is fully qualified and competent by his/her training, knowledge and experience to perform the Appraisal, and Broker has verified the appraiser's competency by reviewing the appraiser's education, experience and knowledge

(4)   The appraisal shall have been completed without influence from someone who desires a specific value or specific outcome

(5)   The appraisal is not based upon a requested minimum valuation, a specific valuation, or the approval of a Loan

(6)   The employment of the appraiser was not conditioned upon the appraisal producing a specific value or a value within a given range nor was the future employment of the appraiser conditional upon an appraisal producing a specific value

(7)   Employment, compensation and future employment of the appraiser was not based upon the approval of a Loan Package

(8)   Neither the appraiser nor any person with an ownership or other financial interest in the company employing the appraiser, is related to, or has any ownership or other financial interest in either the builder/developer, seller, buyer, mortgage Broker or real estate broker/salesperson (or any person related to any of them) involved in the transaction for which the appraisal has been requested, or with the most recent sale or refinancing of any property used as a comparable property in the appraisal

(9)   Broker has furnished to Lender an accurate appraisal by a qualified and properly licensed appraiser

(ix)   Prohibited Loans   None of the Loans submitted by Broker qualify as "high cost loans," "Section 32" loans or are in any other way considered predatory loans under applicable law   In addition, none of the Loans qualify as a secondary mortgage home equity loan under applicable provisions of Texas law

6. **Remedies for Breach** Upon the occurrence of any breach of the representations, warranties, covenants or conditions contained in this Agreement by Broker, or upon the occurrence of an event of default by borrower under the terms or conditions of a Mortgage or Note within 120 days after the date on which the first payment on the applicable Loan was due to Lender, Lender shall have the right to require Broker to repurchase the Loan or Loans affected by such breach for a price equal to the then outstanding principal balance of such Loan(s) plus (i) all accrued and unpaid interest due on such Loan(s) as of the date of repurchase, (ii) any premium or above par pricing paid by Lender for such Loan and (iii) all other fees, penalties, charges or expenses (including reasonable attorney fees) assessed against or incurred by Lender in connection with the Loan(s) (the sum of such amounts, the "Repurchase Price")

Lender may, in its sole discretion, elect to sell any Loan(s) subject to repurchase pursuant to this Agreement to an unaffiliated third party in lieu of requiring Broker to repurchase such Loan(s) Upon the occurrence of such a third party sale, Broker's liability to Lender for such Loan(s) shall be equal to the amount of the Repurchase Price less the actual amount received by Lender in such third party sale (which amount shall conclusively be deemed to be a reasonable mitigation of Lender's damages) Lender shall have the right of setoff for all amounts owed to it from Broker pursuant to this Section 6 Such right of offset shall be from any funds of Broker held by Lender or due to Broker from Lender In addition, Lender shall have the right to specific performance in enforcing Broker's obligation to repurchase any Loan pursuant to this Agreement For purposes of this Section 6, a breach of a representation and warranty will be deemed to have occurred notwithstanding any qualifying language in the applicable representation or warranty regarding the Broker's knowledge of such event or condition

7 **Indemnity** Broker shall indemnify and hold harmless Lender, its shareholders, directors, officers, agents, employees, successors and assigns against any loss, damage, claim, expense, liability or cost (including reasonable attorney fees) arising from any breach by Broker of the provisions of this Agreement

8. **No Solicitation/Premium Recapture** Broker agrees that for a period of one year following the origination of any Loan, neither Broker, its agents, affiliates, successors nor its assigns will take any action to solicit any borrower under any Loan in order to effect the refinancing of any Loan General solicitations or mass mailings not specifically targeted at a borrower shall not be considered a breach of this Section 8 Broker agrees to refund to Lender all compensation paid by Lender on any Loan(s) which (i) prepay in full during the first four (4) months after the applicable closing date for such Loan(s) or (ii) Broker has solicited in violation of this Section 8

9. **Covenants**

   (a) *Additional Documents* Broker warrants that it will provide, or cause to be provided, within thirty days of origination of a Loan, any additional mortgage loan documents as required for the sale of the loan and as are reasonably requested by Lender Brokers will assist Lender in complying with any requests for updated documents, clarification of information, or other requests made by its secondary-market investors to effect the sale of the Loan

   (b) *Financial Statements* Broker shall, so often as Lender may reasonably request, but no less often than once each year (within 90 days after Broker's fiscal year end), submit to Lender,

AUG-29-2006 TUE 11:56 AM ● ORTGAGE         FAX NO ● 09196            P. 12

financial statements for the previous 12-month period that accurately reflect and completely disclose the financial condition of Broker

(c) <u>Error & Omissions</u>   If required by applicable state law, Broker will maintain in full force and effect during the term of this Agreement an Errors & Omissions policy covering losses per incident of at least $300,000

(d) <u>Privacy of Consumer Information</u>

(i) Broker agrees not to disclose any information relating to a specific person that was obtained from applicants or other sources during the loan application process (collectively, "Consumer Information") provided either by applicants or Lender to any affiliate or unaffiliated third party except in accordance with applicable law

(ii) Broker shall provide Lender with its current privacy policy, and will update such policy periodically as required by applicable law

(iii) Broker shall have in place an information security program designed to ensure the security of Consumer Information, protect against unauthorized access to Consumer Information Broker shall also maintain a written description of its information security program and will provide Lender with a copy of such program upon request

10. <u>Termination</u>   Either party may terminate this Agreement at any time upon written notice to the other party, provided, however, that the obligations contained in this Agreement relating to all Loans originated pursuant to this Agreement shall survive such termination

11. <u>Sublicense of AVENUE Xpress System</u>   During the term of this Agreement, Broker shall be entitled to submit Loan Packages electronically through Lender's "AVENUE Xpress" online underwriting engine   Broker agrees to be bound by the Avenue Xpress User Terms set forth on <u>Exhibit A</u> hereto for all online submissions made by Broker   Broker understands and agrees that the right to use the AVENUE Xpress system may be terminated at any time separately from the remainder of this Agreement at Lender's discretion   Each application for a Loan submitted for purchase must be approved by Lender prior to purchase in accordance with the procedures determined by Lender from time to time

12. <u>Disclosure of Misstatement or Misrepresentation.</u>   Broker acknowledges and agrees that the Lender may report instances of Broker making material misstatements/misrepresentations in connection with a loan, or knowingly aiding a borrower to do the same, to appropriate industry watch groups, agencies, and state and federal authorities or law enforcement agencies

13. <u>Miscellaneous.</u>

(a) <u>Governing Law</u>   This Agreement shall be governed by the laws of the State of Arizona, without regard to conflicts of laws principles   Any action arising out of this Agreement shall be initiated only in Superior Court in Maricopa County, Arizona   Broker irrevocably consents to the jurisdiction of such court for any matter arising under this Agreement

(b) <u>Entire Agreement</u>   This Agreement constitutes the entire Agreement between the parties and supersedes all prior and contemporaneous agreements, representations, and understandings   This agreement shall remain in full force and in effect for all mortgage loans funded by Lender   In the event

that Lender sells or transfers these mortgages, this Agreement and all Broker representations, warranties, and obligations shall remain in full force and in effect

(c) <u>Confidentiality.</u> Broker agrees that it will not, at any time, give or sell any information relating to the Loans to any unaffiliated person or entity. Both parties agree to take all reasonable measures to protect the confidentiality of the other party's proprietary loan program information

(d) <u>No Assignment.</u> This agreement shall not be assignable by Broker without obtaining the prior written consent of Lender

(e) <u>Notice of Certain Matters.</u> Broker shall notify Lender immediately of any material change in its ownership (defined as a 25% or greater change), financial condition, principal management, the status of its applicable state mortgage-lending license or equivalent documentation, or upon the occurrence of any breach of a representation or warranty as set forth in this Agreement

(f) <u>Notices.</u> Unless otherwise set forth herein, any notices or other communications in this Agreement provided or permitted to be given by one party to the other, must be in writing and shall be deemed received upon receipt if personally delivered, upon receipt of electronic confirmation by the sender if transmitted by facsimile or three (3) business days after sending if delivered by certified or registered mail. For purposes of notice the addresses of the parties shall be as follows (unless changed by notice to the other party pursuant to this Agreement)

<u>LENDER</u>

1st National Bank of Arizona
Mortgage Banking Services
1665 W Alameda Drive
MS AZ-4003-102
Tempe, AZ 85282
Attention Broker Management
Facsimile (480) 538-8948

<u>BROKER</u>

LC Mortgage Corporation
4545 Fuller Drive, Ste 225
Irving TX 75038

Attention Stephen Weeks
(F) 972-650-9196

(g) <u>Attorneys' Fees</u> If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled

(h) <u>Waivers.</u> Neither any failure by Lender to notify Broker of a potential breach, nor any delay by Lender in notifying Broker of an actual breach shall be deemed a waiver of any rights of Lender under this Agreement. Any waiver by Lender of a breach of this Agreement shall not be construed as a waiver of any other or future breach of the Agreement, whether or not similar, nor shall any waiver constitute a continuing waiver. No waiver shall be effective unless made in writing by the waiving party

(i) <u>Severability.</u> If any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provisions of this Agreement

(j) <u>Counterparts</u> This Agreement may be executed in one or more counterparts each of which shall be deemed an original and all of, which together shall constitute one and the same Agreement

(k) <u>Amendment or Modification</u> Any modification or amendment to this Agreement, and any future agreement between the parties, must be executed by both parties hereto

AUG-29-2006 TUE 11:57 AM ● MORTGAGE    FAX NO ●09196    P. 15

In witness whereof, the undersigned have signed this Agreement in the capacities hereafter set forth

BROKER  LC Mortgage Corporation    FIRST NATIONAL BANK OF ARIZONA

By /s/
Name Stephen Weeks
Title President

By /s/
Name Lisa V. Leon
Title Broker Liaison